UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KENNARD HARRISON,**<br>    **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **NO. 17-4346** |
| **BP EXPLORATION & PRODUCTION INC., ET AL.,**<br>    **Defendants** | **SECTION: "E" (2)** |

### ORDER AND REASONS

Before the Court is a motion *in limine* to exclude the opinions of Kennard Harrison's ("Plaintiff") medical causation expert, Dr. Jerald Cook ("Cook"), filed by BP Exploration & Production, BP America Production Company, and BP p.l.c. (collectively "Defendants").[1] Also before the Court is the Defendants' motion for summary judgment.[2]

Plaintiff has filed an opposition to both motions,[3] and Defendants have filed replies.[4]

### BACKGROUND

The instant action is a "B3" case arising out of the 2010 Deepwater Horizon oil spill in the Gulf of Mexico. B3 cases involve "claims for personal injury and wrongful death due to exposure to oil and/or other chemicals used during the oil spill response (e.g., dispersant)."[5]

Plaintiff alleges he worked as a shipyard technician in Alabama and was

---

[1] R. Doc. 47.
[2] R. Doc. 48.
[3] *See* R. Doc. 54 (Plaintiff's opposition to Defendants' motion for summary judgment); *see also* R. Doc. 58 (Plaintiff's opposition to Defendants' motion *in limine*).
[4] *See* R. Doc. 69 (reply in support of Defendants' motion *in limine*); *see also* R. Doc. 70 (reply in support of Defendants' motion for summary judgment).
[5] *See In re Oil Spill by Oil Rig "Deepwater Horizon" in Gulf of Mexico,* on Apr. 20, 2010, No. MDL 2179, 2021 WL 6053613, at *10 (E.D. La. Apr. 1, 2021) (Barbier, J.).

1

responsible for cleanup work after the Deepwater Horizon oil spill.[6] Specifically, as a shipyard technician, Plaintiff entered the tanks of docked ships to scrape and vacuum oil and tar from tanks into collections trucks.[7] As a result, Plaintiff was exposed to crude oil and chemical dispersants for approximately two to three months, which allegedly caused him to develop temporary symptoms of heartburn, chest pain, and yellow discharge from his eyes.[8] Plaintiff filed the instant civil action, seeking a jury trial with respect to his claims of negligence.[9]

Plaintiff relies on Cook to provide medical causation analysis supporting Plaintiff's claim that his exposure to oil and dispersants caused his health problems.[10] It is uncontested that Cook is a qualified expert.[11] What is contested, however, is whether Cook's testimony can withstand a *Daubert* challenge. Defendants filed the instant motion *in limine*[12] to exclude Cook's general causation expert testimony and, they argue, if this testimony is excluded, the Court should grant their motion for summary judgment because Plaintiff will lack necessary expert testimony.[13] Alternatively, if Cook's testimony is not excluded, Defendants ask the Court to grant summary judgment because Plaintiff has not produced expert testimony to establish specific causation.[14]

## Motion *in Limine* Standard

A district court has discretion to admit or exclude expert testimony under the

---

[6] R. Doc. 47-2 at p. 3.
[7] *Id.* at p. 2.
[8] R. Doc. 1-1 at p. 5; *see also* R. Doc. 58 at p. 3.
[9] R. Doc. 1.
[10] R. Doc. 58 at p. 2 ("Dr. Cook has been engaged by undersigned counsel and has issued general causation reports in approximately 130 BP Oil Spill worker cases.").
[11] R. Doc. 47-1 at p. 3.
[12] R. Doc. 47.
[13] R. Doc. 48.
[14] *Id.*

Federal Rules of Evidence.[15] Indeed, the Supreme Court held Rule 702 requires a district court to act as a gatekeeper to ensure "any and all scientific testimony or evidence admitted is not only relevant, but reliable."[16] Rule 702 governs the admissibility of expert testimony,[17] providing:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts.

*Daubert* "provides the analytical framework for determining whether expert testimony is admissible under Rule 702."[18] The burden of proof rests with the party seeking to present the challenged expert testimony—namely, a preponderance of the evidence standard.[19] Both scientific and nonscientific expert testimony is subject to the *Daubert* framework, which requires a trial court to make a preliminary assessment "to determine whether the expert testimony is both reliable and relevant."[20]

In terms of the reliability inquiry, a series of non-exhaustive factors are considered, including: (1) whether the technique has been tested, (2) whether the technique has been subjected to peer review and publication, (3) the technique's potential error rate, (4) the existence and maintenance of standards controlling the technique's operation, and (5)

---

[15] *General Elec. Co. v. Joiner*, 522 U.S. 136, 139 (1997).
[16] *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 588 (1993)
[17] *Id.*; *United States v. Hitt*, 473 F.3d 146, 148 (5th Cir. 2006).
[18] *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002).
[19] *Kennedy v. Magnolia Marine Transp. Co.*, 189 F. Supp. 3d 610, 615 (E.D. La. 2016); *see also Daubert*, 509 U.S. at 592 n.10.
[20] *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004); *see Kumho Tire v. Carmichael*, 526 U.S. 137, 147 (1999).

whether the technique is generally accepted in the relevant scientific community.[21] The reliability inquiry must remain flexible, however, as "not every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant."[22] "Both the determination of reliability itself and the factors taken into account are left to the discretion of the district court consistent with its gatekeeping function under [Rule] 702."[23]

In terms of the relevancy inquiry, the proposed testimony must be relevant "not simply in the way all testimony must be relevant [under Rules 401 and 402], but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue."[24] The "helpfulness" prong is concerned with ensuring the expert testimony is not only scientifically reliable but also "relevant to the task at hand."[25]

## Motion for Summary Judgment Standard

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[26] "An issue is material if its resolution could affect the outcome of the action."[27] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[28] All reasonable inferences are drawn in favor of the non-moving party.[29]

---

[21] *Burleson*, 393 F.3d at 584.
[22] *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004); *see Runnels v. Tex. Children's Hosp. Select Plan*, 167 F. App'x 377, 381 (5th Cir. 2006) ("[A] trial judge has 'considerable leeway' in determining 'how to test an expert's reliability.'" (quoting *Kumho Tire*, 526 U.S. at 152)).
[23] *Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000).
[24] *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003).
[25] *Daubert*, 509 U.S. at 597.
[26] FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).
[27] *DIRECTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[28] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).
[29] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

4

There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party, thus entitling the moving party to judgment as a matter of law.[30]

"Although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible . . . the material fact may be presented in a form that would not, in itself, be admissible at trial."[31]

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."[32] To satisfy Rule 56's burden of production, the moving party must do one of two things: "the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim" or "the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim."[33] If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the non-moving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[34]

If the dispositive issue is one on which the non-moving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the non-movant's

---

[30] *Hibernia Nat. Bank v. Carner*, 997 F.2d 94, 98 (5th Cir. 1993) (citing *Amoco Prod. Co. v. Horwell Energy, Inc.*, 969 F.2d 146, 147–48 (5th Cir. 1992)).
[31] *Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017) (citations omitted).
[32] *Celotex*, 477 U.S. at 323.
[33] *Id.* at 331.
[34] *Id.* at 322–24.

claim, or (2) affirmatively demonstrating that there is no evidence in the record to establish an essential element of the non-movant's claim.[35] If the movant fails to affirmatively show the absence of evidence in the record, its motion for summary judgment must be denied.[36] Thus, the non-moving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[37] "[U]nsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[38]

**LAW AND ANALYSIS**

**I.    BP's motion *in limine* to exclude Cook's general causation expert testimony is granted.**

"B3 plaintiffs must prove that the legal cause of the claimed injury or illness is exposure to oil or other chemicals used during the response."[39] Once a plaintiff's diagnoses have been confirmed, the plaintiff has the burden of establishing general causation and specific causation. "'First, the district court must determine whether there

---

[35] *Id.* at 331–32 (Brennan, J., dissenting).
[36] *See id.* at 332.
[37] *Id.* at 332–33. The burden would then shift back to the movant to demonstrate the inadequacy of the evidence relied upon by the non-movant. Once attacked, "the burden of production shifts to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)." *Id.* at 332–33, 333 n.3.
[38] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) and quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).
[39] R. Doc. 6 at p. 4 (citing Medical Settlement Section VIII(G)(3)a)); *see also In re Oil Spill by Oil Rig "Deepwater Horizon" in Gulf of Mexico*, on Apr. 20, 2010, No. MDL 2179, 2021 WL 6053613, at *10 (E.D. La. Apr. 1, 2021) (Barbier, J.); *accord Perkins v. BP Expl. & Prod.., Inc.*, No. 17-4467, 2022 WL 972276, at *2 (E.D. La. March 31, 2022).

is general causation. Second, if it concludes . . . there is admissible general-causation evidence, the district court must determine whether there is admissible specific-causation evidence.'"[40] "General causation is whether a substance is capable of causing a particular injury or condition in the general population, while specific causation is whether a substance caused a particular individual's injury."[41] With respect to general causation, "[s]cientific knowledge of the harmful level of exposure to a chemical, plus knowledge that the plaintiff was exposed to such quantities, are minimal facts necessary to sustain the plaintiff's burden in a toxic tort case."[42]

### A. Cook fails to verify Harrison's diagnoses.

Defendants first move the court to exclude Cook's expert report because he does not verify Plaintiff's medical diagnoses of heartburn, chest pain, and yellow ocular discharge. The American Medical Association's (AMA) Guide to the Evaluation of Disease and Injury Causation provides the expert's threshold inquiry or "first step is to establish or verify the diagnosis . . . . This step is accomplished by careful review of the available medical records and/or examination of the patient. . . . Exposure becomes relevant only when the presence of disease or illness is established."[43] This threshold inquiry is designed to "avoid wasting time, effort, and resources pursuing unreasonable hypotheses, while at the same time not missing the opportunity to find previously unrecognized hazards."[44] The expert must verify the patient's diagnoses before proceeding to general or specific causation.[45]

---

[40] *Seaman v. Seacor Marine, L.L.C.*, 326 F. App'x 721, 722 (5th Cir. 2009) (quoting *Knight v. Kirby Inland Marine, Inc.*, 482 F.3d 347, 351 (5th Cir. 2007)).
[41] *Id.*
[42] *Allen v. Penn. Eng'g Corp.*, 102 F.3d 194, 199 (5th Cir. 1996).
[43] MELHORN, M.D., ET AL., AMA GUIDE TO THE EVALUATION OF DISEASE AND INJURY CAUSATION (2d ed.), at p. 578.
[44] *Id.*
[45] *Id.*

7

Cook "maintains a copy of this AMA publication and uses it as a reference."[46] Troublingly, though, Cook's report includes no reference to Harrison or his diagnoses[47] and there is no indication that Cook either interviewed or examined Harrison before forming his expert opinion. Furthermore, there is no indication Cook reviewed Harrison's medical records. Plaintiff's opposition admits that Cook "does not base his opinion on a medical diagnosis specific to Harrison," but asserts that "[a] diagnosis is not necessary in a transient symptom case" such as this one.[48] In support of that contention, Plaintiff cites cases like *Guidry v. Dow Chemical Company*[49] and *Bell v. Foster Wheeler Energy Corporation*.[50]

*Guidry* involved a class action suit for damages relating to harm caused by an unexpected release of ethyl acrylate from a tank at a Union Carbide facility in Taft, Louisiana.[51] Before the court on a motion for summary judgment, the sole issue was whether general causation expert testimony alone was sufficient to prove causation between complained-of transient symptoms and exposure when the injury was within the layperson's common knowledge, or whether specific causation expert testimony also was required.[52] The court held specific causation expert testimony was not required to prove the claim because the injuries were within the common knowledge held by jurors.[53] Similarly, in *Bell*, Judge Affrick determined that, for asbestos exposure claims resulting in mesothelioma, as opposed to transient symptoms, general causation expert testimony

---

[46] *Novelozo v. BP Expl. & Prod., Inc., et al.*, No. 13-1033, 2022 WL 1460103 *6 (E.D. La. May 9, 2022) (citing deposition transcript of Cook).
[47] Harrison's name does not appear in Cook's general causation expert report. *See generally* R. Doc. 47-3.
[48] R. Doc. 58 at p. 3.
[49] No. 19-12233, 2021 WL 4460505 (E.D. La. Sept. 29, 2021).
[50] No. 15-6394, 2017 WL 889083 (E.D. La. March 6, 2017).
[51] 2021 WL 4460505 at *1.
[52] *Id.* at *2. This was not at issue in the motion for partial judgment on the pleadings. *Id.* at *3.
[53] *Id.* at *2.

8

could sustain a claim even in the absence of expert testimony on specific causation when there was specific evidence regarding the nature of the plaintiff's exposure.[54] In that case, the court found there may be sufficient evidence to permit the jury to conclude that the defendant's product was a substantial factor in causing the plaintiff's injury.[55]

In sum, *Guidry* and *Bell* analyzed whether, *inter alia*, general causation expert testimony alone could sustain a toxic tort claim without additional expert testimony on specific causation either when the injury was within the layperson's common knowledge or when there was specific evidence regarding the nature of the plaintiff's exposure. Critically, the courts in *Guidry* and *Bell* did not analyze whether, as a threshold matter, a general causation expert is required to confirm a plaintiff's diagnoses.[56] The issue now before this Court relates to Cook's failure to perform the threshold task of confirming Plaintiff's diagnoses—not whether there is a need for expert testimony to prove specific causation.

*Novelozo v. BP Exploration & Production, Inc., et al.*, a similar B3 cleanup worker exposure case in which Cook provided a general causation expert report, is most analogous to the case at bar. In *Novelozo*, one ground upon which Judge Affrick relied to exclude Cook's expert testimony was Cook's failure to verify the plaintiff's diagnoses.[57] In that case, there was evidence Cook examined the plaintiff and reviewed the plaintiff's medical records—but by Cook's own admission he was "unable to perform step 1 [of the AMA Guide] to [his] satisfaction."[58] In this case, Cook does not base his opinion on an

---

[54] 2017 WL 889083 at *3.
[55] *Id.*
[56] *See generally Guidry*, 2021 WL 4460505; *Bell*, 2017 WL 889083.
[57] Novelozo alleged he suffered from dizziness, light headiness, stomach problems, stress, skin rashes, respiratory problems, breathing problems, sleep problems, abdominal pain, bowel problems, nausea, vision problems, memory problems, bloody nose, and loss of libido as a result of his exposure. No. 13-1033, 2022 WL 1460103 *1 n.9 (E.D. La. May 9, 2022).
[58] *Id.* at *5.

9

examination of Harrison, Harrison's medical records, or Harrison's diagnoses. Cook did not even attempt to perform step 1 of the AMA Guide. There is an even greater justification for excluding Cook's expert opinion as unreliable in this case than in *Novelozo*.

Expert testimony "must be reliable at each and every step or else it is inadmissible."[59] The Court's review of the relevant section of the AMA Guide—which BP included in the record—demonstrates the AMA's framework is a published technique with explicit standards controlling its operation.[60] Cook's failure to perform step one of the AMA Guide's framework is concerning because "[e]xposure becomes relevant only when the presence of disease or illness is established."[61] Cook's failure to confirm as a threshold matter that Harrison had been diagnosed with heartburn, chest pain, and yellow ocular discharge reveals that Cook has not "reliably applied the principles and methods to the facts of this case."[62]

This deficiency is particularly concerning because "the fundamental question underlying [Cook's] testimony," as well as the Court's ruling on Defendants' motion *in limine*, is "whether the chemicals that [Harrison was] exposed to and the type of exposures [Harrison] experienced caused [Harrison's illnesses]."[63] Without verifying Harrison's diagnoses, Cook has not sufficiently explained how any particular study could provide "a reliable basis for the opinion that the types of chemicals [Harrison was] exposed to could cause [his] particular injury in the general population."[64] This lack of

---

[59] *Knight v. Kirby Inland Marine, Inc.*, 482 F.3d 347, 355 (5th Cir. 2007).
[60] *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004) (discussing the nonexclusive factors for the reliability inquiry).
[61] MELHORN, M.D., ET AL., AMA GUIDE TO THE EVALUATION OF DISEASE AND INJURY CAUSATION (2d ed.), at p. 578.
[62] FED. R. EVID. 702(d).
[63] *Knight*, 482 F.3d at 352.
[64] *Id.* at 353.

10

verification of Plaintiff's diagnoses weighs against admitting Cook's opinions.[65]

### B. Cook does not identify the harmful level of exposure to a chemical required for complained-of symptoms to manifest, a minimum standard for general causation set by the Fifth Circuit.

Defendants also move the Court to exclude Cook's testimony on general causation because his "report does not include any opinion as to the level of exposure known to cause any of the plaintiff's conditions[, which] [t]he Fifth Circuit described . . . as one of the . . . minimum requirements for an admissible causation opinion."[66]

In recent cases before different sections of this court, nearly identical expert testimony from Cook on general causation has been excluded for various reasons relating to reliability, not the least of which is because "a causation expert must identify 'the harmful level of a[n] exposure to a chemical.'"[67] In fact, in *Murray v. BP Exploration & Production, Inc., et al.*, Judge Ashe examined the exact same Cook report as the one provided in this case and excluded Cook's testimony because Cook "fail[ed] to identify the dose of the toxic chemicals necessary to cause any of the complained-of health effects"— which, again, is a minimum requirement set by the Fifth Circuit.[68]

---

[65] In *Murray v. BP Exploration & Production, Inc., et al.*, Judge Ashe did not decide whether Cook had to verify the plaintiff's diagnoses before assessing general and specific causation because "[t]he necessity of this step may be questioned in light of Judge Barbier's determination" in similar B3 cases "that expert medical testimony on specific causation is not required for transient or temporary symptoms that are within the general understanding of laypersons." No. 17-3582, 2022 WL 1811138 *4 n.52 (E.D. La. June 2, 2022). This Court concludes it is necessary for an expert to verify a plaintiff's symptoms before expressing an opinion as to both general and specific causation because the verification is a threshold inquiry an expert must complete before conducting even a general causation analysis. MELHORN, M.D., ET AL., AMA GUIDE TO THE EVALUATION OF DISEASE AND INJURY CAUSATION (2d ed.), at p. 578. Said differently, verification of Plaintiff's diagnoses should occur before a general causation analysis, which itself should occur before a specific causation analysis. *Id.*
[66] R. Doc. 47-1 at p. 18.
[67] *Novelozo v. BP Expl. & Prod., Inc., et al.*, No. 13-1033, 2022 WL 1460103 *8 (E.D. La. May 9, 2022) (citing *Allen v. Penn. Eng'g Corp.*, 102 F.3d 194, 199 (5th Cir. 1996)); *see also Murphy v. BP Expl. & Prod., Inc., et al.*, No. 13-1031, 2022 WL 1460093 *8 (E.D. La. May 9, 2022); *Johns v. BP Expl. & Prod.*, No. 17-3304, 2022 WL 1811088 (E.D. La. June 2, 2022); *Johnson v. BP Expl. & Prod.*, No. 17-3308, 2022 WL 1811090 (E.D. La. June 2, 2022); *Macon v. BP Expl. & Prod.*, No. 17-3548, 2022 WL 1811135 (E.D. La. June 2, 2022); *Murray*, 2022 WL 1811138; *Street v. BP Expl. & Prod.*, No. 17-3619, 2022 WL 1811144 (E.D. La. June 2, 2022).
[68] *Murray*, 2022 WL 1811138 at *6.

In this case, Cook's report and proposed testimony also fail to satisfy that minimum requirement. In Cook's report, he acknowledges the "toxicology maxim that the dose determines the poison" because most chemicals can be toxic, thereby leaving the dose as the sole determinant of what is toxic.[69] Fatally, however, Cook's expert report includes no identification of the necessary dose of exposure for any of Plaintiff's complained-of symptoms to manifest. Instead, Cook concludes it "can be very challenging to accurately measure or estimate" the necessary dose.[70] While Courts "do not require a mathematically precise table equating levels of exposure with levels of harm, . . . there must be evidence from which a reasonable person could conclude that a defendant's emission has probably caused a particular plaintiff the kind of harm of which he or she complains before there can be a recovery."[71]

Plaintiff's opposition asserts, with no citation to the Cook report, that Cook relies upon the expert testimony of Dr. Rachel Jones as it relates to the identification of the necessary dose of exposure.[72] However, Cook's report, unlike the expert report in *Novelozo* and like the expert report in *Murray*, includes no reference to, or reference to reliance on, Dr. Jones's expert report. In fact, the only time the name "Jones" appears in the expert report is in a citation to a source on cancer policy in the United States by a "D. Jones."[73] As a result, without deciding whether Dr. Rachel Jones' report does in fact quantify the level at which various substances are unsafe to humans, it is clear Cook does not rely on Dr. Jones in the first place.

Additionally, Plaintiff argues Defendants' "quibble[] that Dr. Cook does not

---

[69] R. Doc. 47-3 at p. 27.
[70] *Id.* at p. 28.
[71] *Wright v. Willamette Industries, Inc.*, 91 F.3d 1105, 1107 (8th Cir. 1996).
[72] R. Doc. 58 at p. 4.
[73] R. Doc. 47-3 at p. 30.

identify a harmful level of exposure . . . [is] particularly disturbing" because Cook could not identify the harmful level of exposure because, allegedly, Defendants prevented contemporaneous studies of oil cleanup workers by failing to collect monitoring data.[74] "General causation is whether a substance is capable of causing a particular injury or condition in the general population . . . ."[75] If a substance is capable of causing a particular injury or condition in the general population, an expert must then determine at what level of exposure the condition manifests.[76] To determine that dosage, an expert may consult the universe of epidemiology and toxicology literature studying the chemicals at issue.[77] As Judge Rodgers explained, there is a "massive quantity of high-quality environmental data" in the universe of literature associated with the Deepwater Horizon oil spill.[78] As such, assuming *arguendo* Plaintiff's allegation that Defendants prevented studies of oil cleanup workers by not collecting data related to the Deepwater Horizon oil spill is true,[79] Cook could have attempted to support an opinion as to the dose necessary to cause Plaintiff's symptoms by relying on the universe of relevant epidemiology and toxicology literature studying the spill or by relying on the work of Dr. Jones. He did neither.

In sum, Cook did not identify the necessary dose of exposure for each of Plaintiff's symptoms to manifest. Cook's failure to satisfy this minimum requirement "weighs heavily in favor of exclusion"[80] of his testimony on general causation.

Accordingly, Defendants' motion *in limine* to exclude Cook's general causation testimony must be granted because the testimony is unreliable and, therefore,

---

[74] R. Doc. 58 at p. 8.
[75] *Seaman v. Seacor Marine, L.L.C.*, 326 F. App'x 721, 722 (5th Cir. 2009).
[76] *Murray v. BP Exploration & Production, Inc., et al*, No. 17-3582, 2022 WL 1811138 *6 (E.D. La. June 2, 2022).
[77] *In re Deepwater Horizon BELO cases*, No. 19-963, 2020 WL 6689212 *4 (N.D. Fla. Nov. 4, 2020).
[78] *Id.*
[79] Defendants contend this is an "unfounded conspiracy theory." R. Doc. 69 at p. 7.
[80] *Novelozo v. BP Expl. & Prod., Inc., et al.*, No. 13-1033, 2022 WL 1460103 *9 (E.D. La. May 9, 2022).

inadmissible.

II. **Plaintiff has failed to present a genuine issue of material fact with respect to his claims that his injuries were caused by exposure to oil and dispersants because Plaintiff lacks general causation expert testimony.**

Because Cook's general causation opinions are excluded, Defendants are entitled to summary judgment on Plaintiff's claims.[81] Plaintiff has no other medical expert to establish general causation, which is required in a toxic tort case.[82] Plaintiff has failed to present a genuine issue of material fact with respect to his claims that his injuries were caused by exposure to oil and dispersants. Accordingly, Defendants' motion for summary judgment should be granted.

## CONCLUSION

**IT IS ORDERED** that the motion *in limine*[83] is **GRANTED**.

**IT IS FURTHER ORDERED** that the motion for summary judgment[84] is **GRANTED**. Judgment is granted in favor of Defendants BP Exploration & Production, BP America Production Company, and BP p.l.c. and against Plaintiff Kennard Harrison on all claims.

**New Orleans, Louisiana, this 30th day of June, 2022.**

*Susie Morgan*
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[81] *Id.* at *8; *Murphy*, 2022 WL 1460093 *8; *Johns*, 2022 WL 1811088; *Johnson*, 2022 WL 1811090; *Macon*, 2022 WL 1811135; *Murray*, 2022 WL 1811138; *Street*, 2022 WL 1811144.
[82] *Seaman*, 326 F. App'x at 722; *see also Stephens v. BP Expl. & Prod.*, No. 17-4294, 2022, WL 1642136 *2-3 (E.D. La. June 24, 2022).
[83] R. Doc. 47.
[84] R. Doc. 48.